**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**JOYCE L. SWEARINGEN, *individually, and on behalf of all others similarly situated*,**

**Plaintiff,**

**vs.** **Case No. 8:13-CV-986-T-27MAP**

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,**

**Defendant.**

_______________________________________/

# ORDER

**BEFORE THE COURT** is State Farm's Motion to Dismiss Second Amended Complaint (Dkt. 24), which Plaintiff opposes (Dkt. 25). Upon consideration, the motion (Dkt. 24) is DENIED. In sum, the Second Amended Complaint contains factual allegations sufficient to provide Defendant with fair notice of Plaintiff's claims and those allegations, when taken as true, state one or more claims to relief that are plausible on their face. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). Plaintiff alleges a case or controversy between the parties concerning the allocation of PIP and MedPay benefits appropriate for declaratory relief. The language of the policy does not preclude her claims as a matter of law. If she prevails on Count I, she may be entitled to relief on Counts II and III.[1]

## DISCUSSION

Swearingen purchased an automobile insurance policy from State Farm. As required by statute, the policy provided $10,000 of PIP coverage. Swearingen elected Med Pay insurance for an additional premium, providing $5,000 of medical payments coverage to supplement PIP.

[1] This should not be construed as a comment on the merits of Plaintiff's claims.

Swearingen's policy contained Amendatory Endorsement 6910.3, which addresses both PIP and Med Pay. The Med Pay provision of the Endorsement provides:

> THERE IS NO COVERAGE UNTIL THE MEDICAL EXPENSE BENEFITS OF ALL NO-FAULT COVERAGE AVAILABLE FROM ALL SOURCES HAS BEEN EXHAUSTED. However, this does not apply to the 20% of expenses that are not paid under no-fault coverage because of the 80% limitation.
>
> . . . .
>
> **Limit of Liability**
>
> . . . .
>
> 2. Medical payments coverage is excess over and shall not pay any medical expenses paid or payable under any no-fault coverage, or which would otherwise be payable except for:
>
>     a. any no-fault deductible; or
>
>     b. the amount of workers compensation benefits paid or payable for the same items of loss or expense.
>
> . . . .
>
> **What Is Not Covered Under [Med Pay]**
>
> THERE IS NO COVERAGE UNDER MEDICAL PAYMENTS:
>
> 1. FOR ANY MEDICAL EXPENSES THAT ARE NOT PAYABLE UNDER NO-FAULT COVERAGE, except for:
>
>     a. the 20% of expenses that are not paid under no-fault coverage because of the 80% limitation;
>
>     b. expenses not paid because the medical expense benefits of all no-fault coverage available from all sources has been exhausted;
>
> . . . .

(Dkt. 23-1 at 40-42) (emphasis in original).

When the policy was in effect, Swearingen was injured in an automobile accident. She obtained medical treatment and sent State Farm medical bills and lost wage claims for reimbursement under PIP and Med Pay. State Farm exhausted Swearingen's PIP coverage by paying medical bills without covering her lost wages. Swearingen requested that State Farm reallocate coverage so that PIP covered her lost wages and Med Pay covered the excess medical expenses after PIP was exhausted. State Farm refused, contending that Med Pay could not be transferred to PIP due to language in the Endorsement providing that "[m]edical payments coverage is excess over and shall not pay any medical expenses paid or payable under any no-fault coverage . . . ."

Swearingen alleges that the insurance policy language is vague and ambiguous as to the allocation of PIP and Med Pay coverage and that the policy should be construed in her favor to provide the maximum coverage possible under the policy. She further alleges that if State Farm's reading of the policy is adopted, it would render her PIP and Med Pay illusory and worthless, essentially negating the premium she paid for the coverage. Swearingen alleges that State Farm regularly allocates PIP and Med Pay in this manner, depriving insureds of coverage that would otherwise be provided if lost wages were paid under PIP. According to Plaintiff, this practice is followed throughout the state of Florida except in Lake County, where State Farm routinely grants requests from its insureds to reallocate coverage to maximize reimbursement.

Swearingen originally filed this putative class action in state court. State Farm removed the case under the Class Action Fairness Act and now moves to dismiss the Second Amended Complaint.

State Farm first argues that Swearingen's claims should be dismissed because once PIP coverage was exhausted, State Farm satisfied its duty under the no-fault statute. In support, State

Farm cites various cases holding that once an insurer pays the policy limits to an insured, it is not liable to pay any further PIP benefits. *See, e.g.*, *Progressive Am. Ins. Co. v. Stand-Up MRI of Orlando*, 990 So. 2d 3 (Fla. 5th DCA 2008); *Sheldon v. United Servs. Auto. Ass'n*, 55 So. 3d 593 (Fla. 1st DCA 2010). Swearingen counters that her claims are viable under *Bennett v. State Farm Mutual Automobile Insurance Co.*, 580 So. 2d 217 (Fla. 2d DCA 1991). She is correct.

Bennett was insured by State Farm with both PIP and Med Pay coverage. *Id.* at 218. After an accident, State Farm applied the coverage in a manner that exhausted PIP benefits before utilizing Med Pay, thereby leaving no further benefits or coverage available to cover Bennett's lost wages. *Id.* The Second District ordered State Farm to reapportion the benefits such that PIP coverage would cover lost wages and Med Pay could be utilized for medical benefits. *Id.* The court admonished State Farm that it "should have been more concerned about their obligation to provide their insured with the maximum benefits allowable under the contract." *Id.* State Farm argued that it was not required to reapportion the benefits because they were exhausted and Bennett had not made a request for apportionment prior to the benefits being paid. The court rejected that argument, holding "[w]e do not feel that it is right to deny insured's benefits for which they have clearly paid, because they did not have the insight to determine how their payments should be apportioned." *Id.*

*Bennett* is directly analogous to this case, and Swearingen's claims are therefore viable. State Farm's argument that *Stand-Up MRI* and *Sheldon* control, rather than *Bennett*, is unpersuasive. In *Stand-Up MRI* and *Sheldon*, the plaintiffs were medical providers who sought reimbursement for claims that were originally denied or reduced. *See Sheldon*, 55 So. 3d at 594; *Stand-Up MRI*, 990 So. 2d at 5. Both Courts of Appeal held that the insurer was not liable to the provider because PIP coverage had been exhausted, and the insurer, therefore, could not be liable for additional PIP

payments. *See Sheldon*, 55 So. 3d at 595; *Stand-Up MRI*, 990 So. 2d at 8. Swearingen, however, is not claiming additional PIP payments like the plaintiffs in *Stand-Up MRI* and *Sheldon*. Rather, she is alleging that the PIP *and* Med Pay coverages were improperly apportioned, and is claiming only Med Pay benefits. Under *Bennett*, she has stated a plausible claim.

State Farm argues that *Bennett* is distinguishable. First, it argues that *Bennett* was decided at a time when Med Pay was part of the no-fault statute and therefore "intertwined with the public policy rationale behind PIP." This argument is not supported by *Bennett*, which does not mention Florida's no-fault statute or the Med Pay provision. There is no indication that the Second District relied on the statutory framework for its decision.

Second, State Farm argues that *Bennett* is distinguishable because the Second District did not examine the policy and did not address any potentially limiting language. *See Bennett*, 580 So. 2d at 218.[2] While this is true, *Bennett* supports Swearingen's claim unless the exclusionary language of her policy clearly precludes it. *See Fayad v. Clarendon Nat'l Ins. Co.*, 899 So. 2d 1082, 1090 (Fla. 2005) ("[A]ny exclusion must be strictly construed against the drafter" and "any ambiguity in policy language must be liberally construed in favor of the insured."). State Farm argues that the following exclusion in the endorsement precludes a reallocation of PIP and MedPay benefits: "THERE IS NO COVERAGE UNTIL THE MEDICAL EXPENSE BENEFITS OF ALL NO-FAULT COVERAGE AVAILABLE FROM ALL SOURCES HAS BEEN EXHAUSTED."

State Farm interprets the exclusion too broadly in light of Swearingen's allegations. Reading the allegations in the light most favorable to Swearingen, she alleges that State Farm should have

[2] "We note that the insurance policy in question is not part of the record on appeal. No issue was raised regarding limiting language which might require a different result than that reached herein." *Bennett*, 580 So. 2d at 218.

exhausted PIP by allocating PIP coverage to lost wages first and then to medical bills, after which the remainder of the medical bills could be covered by Med Pay. Under this allocation, medical expense benefits of no-fault coverage would be exhausted before Med Pay funds were disbursed, a process consistent with the plain language of the exclusion. The exclusion therefore does not conclusively preclude Swearingen's claim as a matter of law as State Farm contends.[3]

State Farm also argues that the claim should be dismissed because Swearingen was obligated to notify State Farm to reserve some of her PIP benefits for lost wages *before* those benefits were paid under PIP. The policy, however, does not require her to give that notice. Furthermore, this contention is squarely rejected in *Bennett*, as noted, which reasons that insureds should not be denied benefits just "because they did not have the insight to determine how their payments should be apportioned." *Bennett*, 580 So. 2d at 218.

Finally, State Farm argues that the complaint should be dismissed because Swearingen does not allege compliance with the no-fault statute's presuit demand requirement. Section 627.736(10) requires written notice to initiate litigation concerning no-fault benefits: "As a condition precedent to filing any action for benefits under this section, written notice of an intent to initiate litigation must be provided to the insurer." § 627.736(10)(a), Fla. Stat. Swearingen alleges that a pre-suit demand letter was unnecessary because (1) her claim is not an actions for benefits arising under the no-fault statute, and (2) a pre-suit demand letter would have been futile given State Farm's standard response to requests for reallocation (Dkt. 23 ¶¶ 35, 36, 52, 53, 62-64).

---

[3]Even if the exclusion is ambiguous, Swearingen's claims would survive. *See Wash. Nat'l Ins. Corp. v. Ruderman*, 117 So. 3d 943, 949-50 (Fla. 2013) ("[T]his Court has held many times . . . that where the provisions of an insurance policy are at issue, any ambiguity which remains after reading each policy as a whole and endeavoring to give every provision its full meaning and operative effect must be liberally construed in favor of coverage and strictly against the insurer.").

Regarding futility, State Farm contends that these allegations are insufficient because Swearingen does not provide a sufficient factual basis supporting futility, and allowing Swearingen to allege futility in this manner would "eviscerate the entire purpose of serving a demand letter on an insurer" (Dkt. 24 at 21). At the motion to dismiss stage, however, all facts must be construed in the light most favorable to Swearingen and all of her allegations must be accepted as true. The Second Amended Complaint, applying these principles, adequately alleges that service of a demand letter was unnecessary because this is not an action for benefits arising under the no-fault statute, and in any event, she provides plausible factual support for her allegation of futility.[4]

Accordingly, State Farm's Motion to Dismiss Second Amended Complaint (Dkt. 24) is **DENIED**. State Farm shall answer the Second Amended Complaint within **fourteen (14) days** of the date of this Order.

**DONE AND ORDERED** this 9th day of December, 2013.

**JAMES D. WHITTEMORE**
**United States District Judge**

Copies to:
Counsel of Record

[4]The remainder of State Farm's arguments have been considered and are without merit.